**W. PAYNTER SHARP & SON, INC., a corporation of the State of Delaware, Plaintiff,**

v.

**Austin N. HELLER, Secretary of the Department of Natural Resources and Environmental Control, Defendant.**

Court of Chancery of Delaware, Kent County.

June 28, 1971.

John E. Messick, of Tunnell & Raysor, Georgetown, for plaintiff.

Richard H. Schliem, III, Deputy Atty. Gen., State of Delaware, for defendant.

DUFFY, Chancellor:

In this action W. Paynter Sharp & Son, Inc. (plaintiff), seeks an order restraining the Secretary of the Department of Natural Resources and Environmental Control of the State of Delaware from awarding three contracts to another bidder for public work. Plaintiff submitted the low bids (totaling about $66,774) on each of three contracts for boat ramp repairs, restoration of a bulkhead and the erection of launching facilities. Plaintiff applied for a restraining order on June 17 but the State agreed to defer (without order) the award of any contract until the record was supplemented and counsel had further opportunity to be heard. Thereafter the State filed an answer, both parties filed affidavits and then were heard on June 28.

Because funds available for the work must be committed by June 30, the decision on the motion will, for practical purposes, be determinative of the action. This, then, is the decision on plaintiff's motion for what I regard as a permanent injunction.

### A.

The State tacitly concedes that plaintiff's bids were regular in all respects and, presumably, it would have been awarded the contracts in the ordinary course of events. The Secretary decided, however, to award the contracts to another vendor for reasons which appear in identical letters he wrote to plaintiff on June 11; the letters read:

"Dear Mr. Sharp:

You are a member of the Fish and Wildlife Advisory Council and therefore must be treated as a person closely associated with the Department of Natural Resources and Environmental Control and the State of Delaware.

Based on consultation with the Attorney General's office, and pursuant to Title 29, Section 6908 of the Delaware Code Annotated, it is my decision as Secretary of DNREC and the policy of the Department, that the best interest of the State will be served by awarding the above contracts to a vendor other than one who has a close association with DNREC; this will avoid any allegation or suggestion of undue influence in the letting of contracts by this Department.

In doing so, I wish to state that this in no way reflects on your integrity or on any work that you have done for the State in the past.

For this reason, your bid on the above numbered contracts is rejected."

### B.

Plaintiff makes two arguments challenging the Secretary's right to rely on the statute which he cited.

■ First, it says that § 6908 is applicable to a State "agency" and the Secretary of the Department is not an agency within the meaning of that statute.[1] 29 Del.C. § 6901 provides that in the Chapter of the Code relating to contracts for public improvements "agency" has the same meaning as the definition in § 6301.[2] Under that definition agency includes a "department" or a "person" executing a governmental function. Quite plainly, the Secretary is the administrator and head of the Department, 29 Del.C. § 8002, with power to supervise and direct its affairs and in so doing he executes a governmental function. It follows that he is an "agency" within the meaning of § 6908.

■ Second, plaintiff argues that the statute requires that the agency "shall set down in its minutes the reason or reasons for granting the contract to the person other than the lowest responsible vendor," and the record does not show compliance with this requirement. There has been no showing that the Department or the Secretary maintains minutes and/or that the

---

1. 29 Del.C. § 6908 provides:
   "The bids shall pe publicly opened at the time and place specified and the contract shall be awarded within 30 days thereafter by the agency or a representative delegated by the agency, in accordance with regulations prescribed by the agency, to the lowest responsible vendor unless, in the opinion of the agency or its delegated representative, the interest of the State shall be better served by the awarding of the contract to some other vendor, which may then be done, provided the agency shall set down in its minutes the reason or reasons for granting the contract to the person other than the lowest responsible vendor, and clearly describing how the interest of the State shall be better

served by awarding the contract to other than the lowest vendor. * * * The agency or its delegated representative may reject all bids."

2. 29 Del.C. § 6301 states:
   " 'Agency' includes every board, department, bureau, commission, person or group of persons or other authority created and now existing or hereafter to be created to exclude, supervise, control and/or administer governmental functions under the laws of this State or to perform such other duties as may be prescribed or to whom any moneys are appropriated under any budget appropriation act or supplemental appropriation act. * * * *"

Secretary's reason for going to another vendor is reflected by a formal writing in any place other than in the letter to plaintiff. The language of § 6908 probably requires modification to bring it into conformity with the recent restructuring of the Executive branch of State government, but the absence of "minutes" is not fatal to the State's position. I say this because the purpose of requiring a statement of reasons in minutes, in this context, is to make a public record of those reasons. For present purposes, I regard the substance of that purpose as having been accomplished here by the Secretary's letter to plaintiff.[3] In view of the centralization of authority in one person (the Secretary), a different result would give preference to form at the expense of substance.

### C.

An affidavit filed by the State says that the "Division of Fish and Wildlife has specific authority and responsibility with respect to the subject matter covered by the contracts" in issue in this lawsuit. By statute there is established a Council on Game and Fish which has a duty to serve in "an advisory capacity to the Director of Fish and Wildlife." 29 Del.C. § 8005. The complaint states that plaintiff's president, W. Paynter Sharp, is a member of that Council.[4] The State's affidavits also show that Fish and Wildlife personnel assisted in preparation of the contracts and that a Council member who requests information about the responsibilities of the Division is never refused access to it; at its meetings the Council discusses and makes recommendations on all facets of the Division's policies and operations, including the expenditure of moneys allocated to it.

The connection of plaintiff, through its President, with the Division was thus used by the Secretary as the basis on which he determined that the best interest of the State would be served by awarding the contracts to another vendor. His stated purpose was to avoid any allegation or suggestion of undue influence in the awarding of the contracts.

In Fetters v. Mayor and Council of Wilmington, 31 Del.Ch. 319, 72 A.2d 626 (1950), Chancellor Seitz discussed statutes dealing with bidding on public work and said this:

> "Statutes dealing with bidding on public work are to be construed in the light of their primary purpose—to protect the public against the wasting of its money. These statutes seek to prevent waste through favoritism and yet permit proper supervision over the qualifications of the bidders. Thus, there is the desire to see that public officials have public work done as cheaply as possible."

■ That purpose would be accomplished here, in one sense, at least, by the award of these contracts to plaintiff, because its bids were about $9,000 lower than those of competitors. But the saving of money, which is certainly desirable, is not the exclusive test by which a vendor is to be chosen. We must look to State policy as expressed in the statute regarding the award of contracts. But before doing so, it is appropriate to say that Delaware does not have a statute (of general application) with respect to conflict of interest or undue influence in the awarding of contracts for public work. There is not an Executive Order dealing with this subject. And the Secretary has not adopted or attempted to adopt a policy of Department-wide application as to them.[5] This void points up a

---

3. As a matter of procedure, it seems to me that until § 6908 is modified to reflect the present structure in the Executive branch, it is desirable for the Secretary to maintain formal "minutes" or a record book under that statute.

4. It is not argued that the Court should distinguish between Mr. Sharp personally and the corporate bidder.

5. Mr. Heller took office as the first Secretary of the newly created Department on March 2, 1970. In the fall of 1970 the Department adopted a procurement policy which includes provisions for "Ethics in Purchasing" but, according to his affidavit, nothing contained therein is relevant to the present case.

significant weakness in the State's position: the standard for rejection of low bids because of the appearance of undue influence (and, implicitly, of a conflict of interest) has been made for these contracts only; the determination has not been made on the basis of general standards. But the weakness is not fatal.

■ The directive of § 6908 is that a contract is to be awarded to the lowest responsible vendor unless in the "opinion of the agency" the interest of the State shall be "better served" by going to another vendor "which may then be done." The language is broad, the discretion substantial. Basically, the agency has authority to reject even a responsible bidder who is lowest if in its "opinion" the State would be better served by another vendor. And that broad language is emphasized in this case by the statutory power of the Secretary who may "Make * * * any * * * contracts * * * whenever the same shall be deemed by [him] * * * necessary or desirable in the performance of the functions of the Department. * * * " 29 Del.C. § 8003 (e).

■ On May 22, 1970 the Department contracted with plaintiff while Mr. Sharp was a member of the Council on Game and Fish. I do not regard that, however, as a waiver of the Secretary's right to act under § 6908 as to the contracts now in issue, nor must it be controlling as to his decision on later bids.[6]

■ Given the very broad discretion vested in the Secretary, I am unable to say as a matter of law that he is not authorized to make the decision that he did in this case as to what is in the best interest of the State. In short, I cannot say that his "opinion" was arbitrary or capricious or otherwise without foundation in law. The award of contracts for public work has been suspect, often, because of alleged favoritism, undue influence, conflicts and the like. In my view it is vital that a public agency have the confidence of the people it serves and, for this reason, it must avoid not only evil but the appearance of evil as well. There is nothing whatever in this record, as the Secretary concedes, to show that either plaintiff or Mr. Sharp secured the contracts as the result of anything other than submitting the lowest responsible bid. But confidence in the Department is vital and, while $9,000 is a lot of money, I refuse to say, as a matter of law, that the Secretary was without authority to act upon his opinion that it was in the State's best interest to spend that additional amount on these contracts.[7]

Under the law, as I view it, the Court cannot say that the Secretary's decision was not authorized by § 6908. Plaintiff's motion for injunctive relief is denied. It is so ordered.

As a matter of law, I decline to say that the Secretary's decision was not authorized under § 6908. The application for a restraining order is denied. It is so ordered.

6. Plaintiff relies on Opinion of the Justices, 104 N.H. 261, 183 A.2d 909 (1962) but I do not think it pertinent; we are here concerned with whether a decision to eliminate a possible allegation of undue influence may be sustained under a statutory grant of power, not with whether there is in fact a conflict of interest.

7. In his affidavit Mr. Sharp states that the Council has not considered any matter relating to any contract proposed by the Department, including the three contracts in dispute. The awarding of a contract is not, however, the final event in a State-bidder relationship. It is, indeed, only the beginning. Performance follows

award and with it certainly the possibility of differences as to quality of work and whether it is done on time. These contracts are to be administered by the Director of Fish and Wildlife. The Council serves in an "advisory capacity to the Director" of that Division and it shall "consider matters relating to the protection, conservation and propagation of all forms of fish and protected wildlife of this State and such other matters" as may be referred to it by the Director. 29 Del.C. § 8005. Before acceptance of the work required by these contracts the Department may want the views of the Council (as the statute contemplates).